The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Morgan and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction over the parties and the subject matter.
2. This case is subject to the North Carolina Workers' Compensation Act.
3. An employment relationship exited between the plaintiff and the defendant-employer on 20 June 1996.
4. The defendants denied liability for the plaintiff's injuries and disability, and the plaintiff has not received any workers' compensation benefits.
5. The plaintiff's average weekly wage was $318.70.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
 FINDINGS OF FACT
1. The plaintiff worked for the defendant-employer almost four years doing construction work. He had no back problems prior to 20 June 1996.
2. Around 3:30 p.m. on 20 June 1996, the plaintiff injured his back when he and three co-workers were attempting to lift a steel beam weighing approximately six hundred pounds. One of his co-workers slipped and dropped his end of the beam, and although it did not fall, the beam jerked and shifted extra weight to the plaintiff. The plaintiff immediately felt pain in his low back and left hip. After the beam was placed on the ground, his back started throbbing. The plaintiff worked the remainder of the day, but his back pain got progressively worse.
3. The plaintiff attempted to work the next day, Friday, 21 June 1995, but his back pain was so severe that he could not continue. The entire work crew had planned to stop around noon that day, so the crew packed up and left the site early when the plaintiff said he could no longer work. The plaintiff discussed his back injury with Mr. Morgan, the owner of the defendant-employer company, that day.
4. Since the plaintiff was not scheduled to work the next two days, which were Saturday and Sunday, he rested all weekend. On Monday, 24 June 1996, the plaintiff stayed out of work and went to the Brigman Medical Emergency Clinic, where he was diagnosed with lumbago and sciatica and advised not to lift or climb for three to six days.
5. When Mr. Morgan came to pick up the plaintiff for work the next morning, the plaintiff told him of the diagnosis. Mr. Morgan told the plaintiff he could remain out of work for a week.
6. Mr. Morgan referred the plaintiff to Dr. Robert Stroud, a chiropractor, and told the plaintiff that he would pay for the chiropractic treatment out of his pocket because he did not want to turn the claim into his workers' compensation carrier.
7. Around 1 July 1996, the plaintiff went to see Dr. Stroud, but Dr. Stroud refused the see him because Mr. Morgan had told Dr. Stroud that he would not pay for it. Mr. Morgan admitted in his testimony that he originally agreed to pay for two to three visits with the chiropractor, but when he found out the chiropractor was recommending two to three weeks of treatment, Mr. Morgan changed his mind. The plaintiff did not treat with the chiropractor because he did not have the money himself.
8. On 3 July 1996, the plaintiff went to Mr. Morgan's house to discuss Mr. Morgan's refusal to pay for the chiropractic treatment. An altercation ensued and Mr. Morgan fired the plaintiff. The plaintiff was seen at the Emergency Room at Community General Hospital that same day complaining of back pain. He reported the fight that day, further stating that his back had hurt since his accident ten days prior and the fight made it worse. The plaintiff was instructed to rest two days and see a physician or chiropractor if the pain had not improved in three days or resolved in seven.
9. The plaintiff continued to have severe back pain. However, he could not afford and did not receive any further medical treatment until he obtained Medicaid and was seen by Dr. Von Seggen at Reynolds Health Center in Winston-Salem on 10 September 1996. Dr. Von Seggen's records indicate that the plaintiff hurt his low back on 20 June 1996 lifting steel at Morgan Construction. Dr. Von Seggen diagnosed acute/chronic lumbosacral pain, and prescribed medication and bedrest, authorizing the plaintiff to remain out of work. Dr. Von Seggen continued to treat the plaintiff conservatively, and instructed him to remain out of work until the plaintiff was seen by Dr. Albert Marr, an orthopedist at Bowman Gray School of Medicine.
10. Dr. Marr first saw the plaintiff on 14 November 1996. At that time, the plaintiff complained of continued low back pain since the June injury at work. Dr. Marr diagnosed musculature strain, prescribed medication and referred the plaintiff to a self-care back clinic. The plaintiff continued to treat conservatively with Dr. Marr up through the 19 March 1997 hearing date, and was scheduled to return in April, 1997 after the hearing.
11. On or about 1 March 1997, the plaintiff returned to work full-time for another employer earning his pre-injury wages.
12. On 20 June 1996, the plaintiff injured his back as a direct result of a specific traumatic incident of his assigned work with the defendant-employer.
13. As a result of this injury, he was incapable of earning any wages with the defendant-employer or in any capacity from 21 June 1996 until 1 March 1997.
14. No evidence was presented regarding any permanent partial disability.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On 29 June 1996, the plaintiff sustained an injury by accident arising out of and in the course of his employment with the defendant-employer as a result of a specific traumatic incident of his assigned work with the defendant-employer. N.C.G.S. § 97-2(6).
2. As a result of the injury by accident, the plaintiff was temporarily and totally disabled from 21 June 1996 until 1 March 1997, and is entitled to temporary total disability compensation at the rate of $212.46 per week for that period. N.C.G.S. §97-29.
3. The plaintiff is entitled to have the defendants provide all medical compensation arising from this injury by accident. N.C.G.S. § 97-2(19), 25.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. The defendants shall pay compensation to the plaintiff for the temporary total disability he sustained as a result of this injury by accident. This compensation has accrued and shall be paid in a lump sum subject to the attorney fee hereinafter approved.
2. The defendants shall pay all statutorily authorized medical expenses incurred as a result of this injury by accident.
3. An attorney fee in the amount of twenty-five percent of the net compensation due to the plaintiff is approved for the plaintiff's attorney and shall be deducted from the amount due to the plaintiff and paid directly to the plaintiff's attorney by the defendants.
4. A decision on the issue of any permanent partial disability resulting from this injury by accident is deferred and reserved after the parties present evidence or settle the matter upon receipt of appropriate medical opinions. Plaintiff is ordered to cooperate with the scheduling of medical evaluations as requested by defendants.
 S/ ______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/ ______________ THOMAS J. BOLCH COMMISSIONER
S/ ______________ CHRISTOPHER SCOTT COMMISSIONER
DCS:bjp